UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| INFRA-METALS CO., | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) CAUSE NO. 2:09-CV-170RM |
| | ) |
| 3600 MICHIGAN CO., LTD., | ) |
| | ) |
| Defendant | ) |

OPINION AND ORDER

3600 Michigan Co., Ltd., seeks summary judgment on Infra-Metals Company's claims. 3600 contends it is entitled to judgment on the basis of *res judicata* and the preclusive effect of Federal Rule of Civil Procedure 13(a). For the reasons that follow, the court disagrees with 3600 on the application of *res judicata*, but stays this case, in anticipation of eventual entry of judgment to 3600, based on Infra-Metals' failure to plead the claims in this complaint as a compulsory counterclaim in an earlier suit between these parties.

I

The facts relevant to the summary judgment motion are not in dispute. Preussag International Steel Corp., now known as Infra-Metals, operated a steel service center facility at 3600 Michigan Avenue in East Chicago for a number of years. After 3600 Michigan Co. Ltd. acquired the property, Preussag continued to operate its steel service center there under a lease agreement that the parties entered into on August 1, 1997. The lease was set to expire in 2007. Infra-Metals

notified 3600 in 2003 that it was terminating the lease and vacated the property. In July 2003, the parties resolved their differences and entered into Amendment No. 1 to the Lease, which reduced the rent and provided that the parties would "cooperate and use reasonable efforts to locate a new tenant" for the property "by jointly engaging CB Richard Ellis . . ."

3600 contends that Infra-Metals let the premises fall into disrepair over the next four years, causing 3600 to expend hundreds of thousands of dollars to repair the leased premises, including repair of the cranes left on the property. On September 20, 2007, 3600 brought suit in state court alleging that Infra-Metals committed material breaches of the leases — that Infra-Metals' predecessor (Preussag) failed to obtain a letter of credit, that Infra-Metals failed to make repairs, pay rent, obtain insurance, pay taxes, and maintain the property. Infra-Metals counter-claimed for breach of the lease, alleging that 3600 failed to make reasonable efforts to sell or lease the property and failed to return Infra-Metals' deposit. That action was removed to this court and now pends before the Honorable Philip P. Simon as cause number 2:07-CV-367. The parties' briefs call the 2007 case "Suit 1," with the eventual 2009 case called "Suit 2."

In October 2008, Infra-Metals moved to amend its counterclaim in Suit 1 to add claims against 3600 for common law conversion and statutory replevin under IND. CODE §32-35-2 *et seq.* The property had cranes on it that Infra-Metals used while it leased the property. Infra-Metals sought to add claims that 3600's retained possession of the cranes constituted conversion. Infra-Metals said it had

2

become evident through discovery that the parties disagreed about who owned the cranes. 3600 objected to the motion to amend. The court denied the motion in December 2008, finding:

> [i]t is implausible that Infra-Metals vacated the property five years ago and left behind several cranes without realizing it owned them. . . . [T]he deadline for leave to amend has passed, and it is difficult to fathom how Infra-Metals neglected to notice the missing cranes until now. In other words, Infra-Metals neglected to examine the details of this cause of action until the case had moved towards the close of discovery. As such, the court does not find good reason for Infra-Metals to have delayed the amendment request. Though it is unclear whether 3600 Michigan would suffer undue prejudice in defending the new charges in light of Infra-Metals' willingness to extend the discovery deadline, the deadlines . . . are set in order to avoid such late-stage changes of strategy as are evidenced here.

The court denied the motion for leave to amend based on undue delay by Infra-Metals because the motion was filed six months after the deadline to amend had passed.

Infra-Metals then filed Suit 2 against 3600 in state court in May 2009 for common law conversion and replevin, claiming entitlement to the cranes under the terms of the lease agreement. 3600 removed Suit 2 to this court and in July 2009, 3600 moved to consolidate Suit 2 with Suit 1. The magistrate judge denied consolidation because the cases don't involve the same questions of law. The magistrate judge explained:

> The Complaint in cause number 2:07-cv-367 alleges a cause of action for breach of a lease agreement. By contrast, the Complaint in the instant matter alleges claims for common law conversion and replevin. To succeed on a breach of contract claim, a plaintiff must establish the existence of a contract, defendant's breach of the contract, and damages. Rogier v. Am. Testing & Eng'g Corp., 735

3

> N.E.2d 606, 614 (Ind. Ct. App. 2000). The elements necessary to establish a civil cause of action for conversion are the same elements as provided in the criminal conversion statute, namely "[a] person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion . . . ." Anderson v. Indianapolis Indiana AAMCO Dealers Advertising Pool, 678 N.E.2d 832, 838 (Ind. Ct. App. 1997). Further, to succeed in a cause of action for replevin, a plaintiff must prove his right to title or possession, that the property has been unlawfully detained, and that the defendant wrongfully holds possession of the property. United Farm Family Mut. Ins. Co. v. Michalski, 814 N.E.2d 1060, 1067 (Ind. Ct. App. 2004). The plaintiff must also prove his right to possession on the strength of his own title. Id. Accordingly, both cases involve different causes of action having different elements. Therefore, the cases do not share a common issue of law.

The magistrate judge further noted that the cases are in different stages of pretrial procedure, so consolidation would only delay Suit 1. The magistrate judge noted that the operative facts are the same in both cases and that 3600 would gain an unfair advantage by consolidating the cases because discovery has already expired in Suit 1.

3600's complaint in Suit 1 arises out of breach of the lease agreement and amendment. 3600 contends that article 3 of the amendment required Infra-Metals to obtain a letter of credit for $200,000, but Infra-Metals failed to do so. 3600 states that based upon the breach, the provision in article 3 providing for a reduction in the rent for the rest of the term of the lease is void and of no effect. 3600 claims that Infra-Metals is in default under article 6B of the lease as to tenant repairs, under article 19 regarding the condition of the premises under surrender, under article 3 for failure to pay base rental due, under article 13 as to damage and casualty, under article 14 as to its responsibility for insurance and

4

indemnity, and under article 4 for failure to pay taxes. 3600 further contends that the property is uninhabitable in its present condition due to Infra-Metals' failure to maintain the property as required under the lease and "3600 Michigan is entitled to be reimbursed for the cost of repair to the buildings, the crane on site and brush and tree removal . . . ."

Infra-Metals' complaint filed in this case — Suit 2 — is for common law conversion and replevin. Infra-Metals contends that 3600 failed to abide by the amendment's terms by not adequately marketing the property and failing to use reasonable efforts to locate a buyer or tenant for the property to the financial detriment of Infra-Metals. Infra-Metals says the cranes belong to Infra-Metals under article 9 of the lease, which states:

> Any trade fixtures, business equipment, inventory . . . and other removable personal property installed in or on the Demised Premises by Tenant (including, without limitation, the Cranes) shall remain the property of the Tenant. Landlord agrees that Tenant shall have the right, at any time or from time to time, to remove any and all of such items provided Tenant repairs any damage to the Demised Premises caused by such removal.

Paragraph 3 of exhibit A of the lease states that "Notwithstanding anything in the Lease to the contrary, the Cranes described on Exhibit A-3 . . . are and shall remain the personal property of Tenant (the 'Cranes')." Exhibit A-3 identifies the 25 ton Whiting Crane, 10 ton Whiting Crane, and 10 ton Engineered Crane.

Infra-Metals contends that it has paid the personal property taxes due for the cranes while the lease was in effect and that these taxes amounted to some $50,000. Infra-Metals says 3600 made alterations to the cranes for $255,832

5

without obtaining Infra-Metals' consent. Infra-Metals argues that it is the lawful owner of the cranes and that 3600 has unlawfully detained them.

II

3600 moves for summary judgment on two grounds. First, 3600 argues that the doctrine of *res judicata* bars the action. Second, 3600 contends that the complaint in this case was a compulsory counterclaim in Suit 1, and so is barred as a result of Infra-Metals' failure to plead. Summary judgment is proper if there is no genuine issue of material fact (and the parties appear to agree that there is none) and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Storie v. Randy's Auto Sales, LLC, 2009 WL 4842481 at *2 (7th Cir. Dec. 17, 2009).

A

3600 contends that the denial of the motion to amend the counterclaim in Suit 1 has *res judicata* effect because it is a determination on the merits under Prof'l Mgmt. Assoc. Inc. v. KPMG LLP, 345 F.3d 1030, 1032 (8th Cir. 2003), and N. Assurance Co. of Am. v. Square D Co., 201 F.3d 84, 88 (2d Cir. 2000). Infra-Metals meets that argument head-on and contends that ruling was based on timing, not on the merits. As the court sees it, the *res judicata* arguments fails for a more fundamental reason: there has been no final judgment that can have preclusive effect.

The law of the state in which the court sits determines the preclusive effect of a prior judgment in a federal diversity case. *See* Taylor v. Sturgell, 128 S.Ct. 2161, 2171, n.4 (2008) ("For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits.") (citation omitted); Allan Block Corp. v. County Materials Corp., 512 F.3d 912, 915 (7th Cir. 2008) (Wisconsin law applied); Extra Equip. E. Exportacao Ltda. v. Case Corp., 361 F.3d 359, 365 (7th Cir. 2004) (Illinois collateral estoppel law applied); *see also* Houben v. Tegular Corp., 309 F.3d 1028, 1035-1036 (7th Cir. 2002). Accordingly, Indiana law applies.

"[C]laim preclusion bars the relitigation of a claim after a final judgment has been rendered, when the subsequent action involves the same claim between the same parties or their privies." Pinnacle Media, L.L.C. v. Metro. Devel. Com'n of Marion County, 868 N.E.2d 894, 899 (Ind. Ct. App. 2007) (citation omitted). "When claim preclusion applies, all matters that were or might have been litigated are deemed conclusively decided by the judgment in the prior action." Id. Indiana applies the following four-part test for claim preclusion: "(1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between parties to the present suit or their privies." Pinnacle Media . Metro. Devel. Com'n, 868 N.E.2d at; *see also* Smith v. Lake County, 863 N.E.2d 464, 470 (Ind. Ct. App. 2007). A final

7

judgments is one that disposes "the subject matter of the litigation as to the parties so far as the court in which the action is pending has the power to dispose of it." Perry v. Gulf Stream Coach, Inc., 871 N.E.2d 1038, 1049 (Ind. Ct. App. 2007) (citations omitted). An interlocutory order isn't a final judgment on the merits for purposes of *res judicata.* Pond v. McNellis, 845 N.E.2d 1043, 1054 (Ind. Ct. App. 2006), *transfer denied.*

No judgment has been entered in Suit 1. Without a final judgment, Indiana law does not recognize a ruling's preclusive effect. 3600 argues that the denial of the motion to amend is practically final, but no federal case suggests that federal law would treat an interlocutory ruling on a motion to amend as a final judgment for purposes of claim preclusion, and no Indiana case suggests that an Indiana court would do so. Without a final judgment, it matters not whether the denial of the motion to amend is said to have been on the merits of the counterclaim. There is no *res judicata* effect, and 3600 isn't entitled to summary judgment on *res judicata* grounds.

B

Federal Rule of Civil Procedure 13(a) defines a compulsory counterclaim as "any claim that – at the time of its service – the pleader has against an opposing party if the claim[] arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[.]" Rule 13(a) is a "procedural implementation of [the res judicata] doctrine." Allan Block Corp. v. County Materials Corp., 512 F.3d 912, 916 (7th Cir. 2008). "All Rule 13(a) does is command that certain claims

8

be pleaded as counterclaims. It does not specify the consequences of failing to do so. Those consequences are given by the doctrine of res judicata . . . ." Id. at 917. If a party doesn't bring a compulsory counterclaim in the original lawsuit, that claim is thereafter barred. Burlington Northern R.Co. v. Strong, 907 F.2d 707, 710 (7th Cir. 1990); *see also* Allan Block v. County Materials, 512 F.3d at 915 (noting that the failure to file a counterclaim generally precludes it from being made the subject of another lawsuit). Rule 13(a) "encourages the simultaneous and final resolution of all claims which arise from a common factual background." Car Carriers, Inc. v. Ford Motor Co., 789 F.2d 589, 594 n. 7 (7th Cir.1986). Rule 13(a) "was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." Southern Constr. Co. v. Packard, 371 U.S. 57, 60 (1962). The Rule was "directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint." Southern Constr. Co. v. Packard, 371 U.S. at 60.

To be a compulsory counterclaim, Rule 13(a) requires that the claim (1) exist at the time of pleading, (2) arise out of the same transaction or occurrence as the opposing party's claim, and (3) not require for adjudication parties over whom the court may not acquire jurisdiction. Burlington Northern R.Co. v. Strong, 907 F.2d at 710-711. A "logical relationship" test determines whether the "transaction or occurrence" is the same for purposes of Rule 13(a). Id. at 711. The court in Burlington Northern v. Strong, explained:

9

> Courts generally have agreed that the words 'transaction or occurrence' should be interpreted liberally in order to further the general policies of the federal rules and carry out the philosophy of Rule 13(a).... As a word of flexible meaning, 'transaction' may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their *logical relationship*. ... [A] counterclaim that has its roots in a separate transaction or occurrence is permissive and is governed by Rule 13(b).

Id. at 711 (citations omitted). The court must examine the factual allegations underlying each claim carefully to decide if the logical relationship test is met. Id. "A court should consider the totality of claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds." Id. at 711-712 (footnote omitted).

When two claims are related, but based on different legal theories and factual issues, the relationship doesn't satisfy Rule 13. Burlington Northern v. Strong, 907 F.2d at 712. In Burlington Northern, the court ruled that a suit to recover funds previously received by an injured railroad employee under a benefit program to supplement benefits wasn't logically related to the injured employee's FELA suit against the railroad. The court reasoned that the two claims raised different legal and factual issues governed by different bodies of law. Id. at 712. In Valencia v. Anderson Bros. Ford, 617 F.2d 1278, 1291 (7th Cir. 1980), *rev'd on other grounds*, 452 U.S. 205, the court held that a claim for the unpaid balance of a loan wasn't a compulsory counterclaim to a suit for violation of the federal TILA because the connection between the claims was "so insignificant that compulsory adjudication of both claims in a single lawsuit will secure few, if any,

of the advantages envisioned in Rule 13(a)." Id. *But see* Assert Allocation and Mgmt. Co. v. Western Employers Ins. Co., 892 F.2d 566, 573-574 (7th Cir. 1989) (noting that it may be necessary to some day reexamine Valencia; stating that insurer's fraud claim based on trading losses suffered as a result of advice received from investment advisor was compulsory counterclaim in investment advisor's breach of contract action against insurer). Even if the counterclaim meets the "same transaction" test, a party need not assert it as a compulsory counterclaim if it has not matured when the party serves his answer. Burlington Northern R.Co. v. Strong, 907 F.2d at 712.

Whether the Rule 13(a) bar requires a final judgment is subject to debate. *See generally* 6 C. Wright & A. Miller, *Fed. Prac. & Proc.* § 1418 (2d ed. 1990). "The plain language of Rule 13(a) does not require that the first case proceed to judgment before a compulsory counterclaim is barred." CIVIX-DDI, LLC v. Expedia, Inc., No. 04 C 8031, 2005 WL 1126906, at *3 (N.D. Ill. May 2, 2005); *see also* Affiliated FM Ins. Co. v. Jou Jou Designs, Inc., Nos. 90 Civ. 8262 and 96 Civ. 5194, 1997 WL 150139, *2 (S.D. N.Y. March 28, 1997) (stating that courts may dismiss actions based solely on claims that should have been asserted as compulsory counterclaims in a pending action).

Other courts disagree and have stated that the first suit must have resulted in a final judgment for Rule 13 to have preclusive effect:

> The court has not located any case applying the bar against omitted counterclaims when the earlier action is still ongoing. This appears natural, since under Rule 13(e) a party who has failed to plead a

11

> counterclaim may obtain leave to subsequently advance that counterclaim when the interests of justice require. Since the Samoan litigation has not proceeded to any form of final resolution, the bar on omitted counterclaims, premised on whatever theory, does not apply.

Raytheon Aircraft Credit Corp. v. Pal Air Intern., Inc., 923 F. Supp. 1408, 1418 (D. Kan. 1996); *see also* Arceo v. City of Junction City, Kansas, 182 F. Supp. 2d 1062, 1083-1084 (D. Kan. 2002) (same); *see also* Fullerton Aircraft Sales & Rentals, Inc. v. Beech Aircraft Corp., 842 F.2d 717, 722 (4th Cir.1988) (noting that even if federal claims were compulsory counterclaims to state court claims, "Rule 13(a) could not be invoked . . . until the [state court] action had proceeded to final judgment") (*citing* 6 C. Wright & A. Miller, *Fed. Prac. & Proc.* § 1418).

Where the first action is still pending, courts have found it appropriate to stay the subsequent action. "Ideally, once a court becomes aware that an action in its docket involves a claim that should be a compulsory counterclaim in another pending federal suit, it will stay its own proceedings or will dismiss the claim with leave to plead it in the prior action." 6 C. Wright & A. Miller, *Fed. Prac. & Proc.* § 1418 (citing cases); *see* Super Natural Distrib., Inc. v. MuscleTech Research and Devel., 140 F. Supp. 2d 970, 975 (E.D. Wis. 2001) ("If a final judgment has *not* been reached in the first suit, the court has discretion to stay or enjoin any subsequent claims, but is not required to do so.") (citations omitted). "[I]n the interests of judicial administration, a court will generally either stay its own proceedings or dismiss an action once it learns that the action before it is properly characterized as a compulsory counterclaim in another pending federal

12

action . . . ." Kim v. Sara Lee Bakery Group, Inc., 412 F. Supp.2d 929, 935 (N.D. Ill. 2006) (*citing* Inforizons, Inc. v. VED Software Servs., Inc., 204 F.R.D. 116, 118 (N.D. Ill. 2001)).

In Suit 1, 3600 brought suit for breach of the lease and amendment alleging that Infra-Metals, among things, failed to maintain the leased property. 3600 seeks, among other things, reimbursement for the cost of repair to the buildings, the crane on site and brush and tree removal. 3600's primary claims involve Infra-Metal's failure to obtain a letter of credit and to pay rent. To establish its claims, 3600 will need to present evidence relating to its relationship with Infra-Metals (or its predecessor, Preussag) beginning in 1997 when they entered into a lease agreement and the course of dealing of the parties through the lease, including the parties' actions after Infra-Metals vacated the property.

In Suit 2, Infra-Metals has brought claims for common law conversion and replevin, contending that the cranes belong to Infra-Metals pursuant to article 9 of the lease, and that 3600's retention of the cranes constitutes conversion. Infra-Metals further alleges that 3600 made alterations to the cranes without obtaining Infra-Metals' consent. In this action, Infra-Metals seeks possession of the cranes and damages as a result of 3600's unlawful possession.

The lease says that Infra-Metals retains ownership of the cranes, but Infra-Metals left the cranes on the leased property for several years and didn't raise this claim in Suit 1 until after the close of discovery. Amendment of the counterclaim in Suit 1 was denied because "[i]t [was] implausible that Infra-Metals vacated the

13

property five years ago and left behind several cranes without realizing it owned them. . . ."

Suit 1 and Suit 2 meet the logical relationship test. Infra-Metals' claims in Suit 2 arise out of the same set of transactions and occurrences as 3600's claims in Suit 2 and both claims involve an interpretation of the lease and amendment. The legal claims may be different, but the underlying factual background is virtually the same. In both actions, the court must review the parties' contractual relationship and course of dealing (particularly from 2003 when the parties entered into the amendment through 2007), and the parties' dealings and actions after 3600 regained possession of the property and the cranes. The parties' course of dealing will shed light on whether Infra-Metals forfeited its ownership interest in the cranes upon leaving them on the property. To resolve both parties' claims, the factfinder would need to examine 3600's repair of the cranes and decide whether 3600 should get reimbursed for the repair or whether 3600's repair of the cranes was wrongful. Because the cases arise out of the same set of transactions and occurrences, Infra-Metals' complaint in this case was a compulsory counterclaim that had to be brought in the first suit.

"The fact that [the judge] did not allow plaintiff[] to proceed on all claims in the first action is not a persuasive reason for granting plaintiffs the right to proceed in a second action." Kim v. Sara Lee Bakery Group, 412 F. Supp.2d at 938 (citation omitted) (dismissing the plaintiff's second suit pursuant to Rule 13(a); the court in the first suit barred evidence relating to those same claims after

finding that the claims weren't encompassed in the plaintiff's complaint and that plaintiff's attempt to vastly expand its claims was untimely). Although such a result might seem harsh, "it is commonplace for a litigant to compromise issues or entire cases by failure to promptly pursue a case or issue or piece of evidence in discovery. . . . At some point, even the most understanding judge will find it necessary to close the discovery period and to leave the record as it has been assembled to that point." Kim v. Sara Lee Bakery Group, 412 F. Supp.2d at 938, n. 7.

C

Precisely because the denial of the motion to amend in Suit 1 is an interlocutory order that still can be reconsidered, summary judgment in this suit is premature. Judgment in this suit would have its own preclusive effect that would, at best, cast doubt over the permissibility of reconsideration in Suit 1 of the amendment. No basis exists for final judgment in this case. Instead, the court will stay this suit and place it on this court's inactive docket. If the amendment is never allowed in Suit 1, the parties may seek to reopen this case so that it can be dismissed based on the compulsory counterclaim reasoning already discussed. If the amendment is allowed in Suit 1, the parties may seek to reopen this case so that it can be denied as moot.

III.

For the foregoing reasons, the court DENIES the defendant's summary judgment motion (doc. #25), without prejudice, as premature. The court STAYS this action pending resolution of cause number 2:07cv367PPS and transfers this cause to the inactive docket. The case shall be closed for statistical purposes, but the closing of this case shall not prejudice the rights of any party.

SO ORDERED.

ENTERED:   December 28, 2009

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court